JOSHUA COIT ET AL., APPELLANTS, v. CHARLES M. FREED ET AL., RESPONDENTS.

CORPORATION—BOARD OF DIRECTORS—INJUNCTION—SCOPE—BREACH.

1. C. and others. stockholders of a mining company, brought suit against certain officers of the corporation to restrain them from selling its treasury stock, alleging that the officers had entered into a fraudulent conspiracy to sell the same to obtain control of the corporation. Pending an order to show cause why a temporary injunction should not issue until the final disposition of the case, the court granted an order restraining the defendants from performing any of the acts threatened by them to be performed and complained of in the complaint. There was no allegation respecting the sale of the stock under judicial process. While the restraining order was pending, one F. brought an action at law against the corporation, and,

after obtaining judgment, bought the treasury stock at execution sale. Thereafter, upon demand therefor, the proper officers issued the stock to him. Afterwards at a meeting of the stockholders for the election of directors, F. and his transferees voted the stock for the defendants, who were then declared elected. The defendants thereupon qualified as directors, and the plaintiffs did likewise. In an action to determine which was the lawful board, *held*, that the officers committed no breach of the restraining order by issuing the treasury stock, and that the defendants constituted the lawful board of directors of the corporation.

2. In determining whether an actual breach of an injunction has been perpetrated, its terms must be considered, and when the writ does not specifically restrain the parties enjoined from the commission of definite acts, but only in a general way enjoins them from the performance of acts complained of in the complaint, it must satisfactorily appear, in order to constitute a breach of the injunction, that the acts performed were included within its scope.

(No. 815. Decided June 24, 1897.)

Appeal from the Third district court, Salt Lake county. Ogden Hiles, *Judge.*

*Quo warranto* by Joshua Coit and others against Charles M. Freed and others. Judgment for defendants. Plaintiffs appeal. *Affirmed.*

This is an action in the nature of *quo warranto*, brought under the statute to determine whether the appellants or respondents constitute the lawful board of directors of the Sheep Rock Mining & Milling Company. The material facts are substantially as follows: The Sheep Rock Mining & Milling Company is a Utah corporation, and its capital stock consists of 52,500 shares, of which 16,186 constituted treasury stock, which had been issued to the stockholders, and by them returned to the treasury. The defendants Tom Ferguson and William Campbell were

respectively vice president and secretary of the corporation from its organization, in 1893, until after the annual meeting of the stockholders held in September, 1895. On January 30, 1895, the plaintiff William T. Wyman and others commenced an action in the district court against Ferguson, Campbell, and others to restrain them from committing certain acts in relation to the treasury stock, and in their complaint alleged that the defendants therein, who were directors of the corporation, had entered into a fraudulent conspiracy for the purpose of obtaining control of the company by electing E. G. Brown as director, by presenting and having allowed fictitious claims against the company, and by requesting a voluntary assessment to be paid by the shareholders, with which to pay those fictitious claims, and that in case certain nonresident stockholders refused to pay such assessment, their purpose was to sell the treasury stock to pay those claims. It was further alleged in the complaint that the "defendants Tom Ferguson and William Campbell claim and pretend to be a majority of the executive committee of the said company, and to have offered and will offer the said treasury stock for sale, and will cause the same to be bought in by some one in collusion with them," at a greatly inadequate price, and "will use the same for the purpose of enabling the said Ferguson and Campbell to control the action of the corporation at future meetings of the shareholders." The prayer was for a perpetual injunction to prohibit the defendants Ferguson and Campbell from carrying out their conspiracy, and to enjoin E. G. Brown from acting as a director, and for a temporary injunction pending the final hearing. Upon filing the complaint and a bond, the court issued an order requiring the defendants to show cause why a temporary injunction should not be issued, restraining "Ferguson

and Campbell, and each of them, from selling or disposing of or offering for sale " the treasury stock, and, pending the hearing of this order, enjoined them from performing any of the acts threatened by them, and complained of in the complaint. The temporary restraining order was served on Ferguson and Campbell, and while it was in force Duncan J. Frew, who was not a party to the injunction suit, but knew of the restraining order, and had been attorney for the company in an action at law in a justice's court on a claim against the company, owned by him, obtained a judgment in due and regular form against the company, and caused execution to be issued thereon. The execution was levied on the treasury stock, and the stock was sold in regular manner thereunder, by a proper officer, to Frew, and a certificate of sale issued to him. Frew then presented his certificate of sale to Ferguson and Campbell, and demanded the stock, which was thereupon issued and delivered to him by them. At the annual meeting of the stockholders held in September, 1895, Ferguson, being chairman in the absence of the president, Frew and his transferees, against the protest of the plaintiffs, voted this stock for the defendants herein as directors of the company, who, thus receiving a majority of the votes cast, were declared elected as such directors for the ensuing year. Outside of the treasury stock, the defendants received a large majority of the votes cast. The defendants then qualified, and acted as directors of the company, and the plaintiffs also qualified as such directors, and demanded the offices before bringing this suit, but the defendants refused to surrender them. Under these facts the court found that the stock in question was not issued in violation of either the spirit or letter of the restraining order, and entered judgment dismissing the complaint herein.

*Frank Pierce,* for appellants:

The stock was issued in violation of the injunction. *Muller* v. *Henry,* 5 Sawyer 464; *Williamson* v. *Carnan,* 1 Gill. & J. 184; *Gibbs* v. *Morgan,* 39 N. J. Eq. 79; 2 High on Injunctions, sec. 1439; *Winn* v. *Albert,* 2 Md. Chan. 42; *Engles* v. *Lubeck,* 4 Cal. 31; *Sharon* v. *Sharon,* 84 Cal. 425.

The transfers of the stock made after an attachment or execution has been levied are absolutely void. 1 Cook on Stockholders, secs. 361-362; *Young* v. *South Tredegar Co.,* 4 A. S. R. 752; *Smith* v. *Am. Coal Co.,* 7 Lansing .317; 2 Thomp. on Corp. secs. 2414-2772; *Shenandoah* v. *Griffeths,* 76 Va. 913; *Thompson* v. *Baker,* 141 U. S. 648.

*Moyle, Zane & Costigan,* for respondents:

Cited: 1 Thom. on Corp., sec. 730; *Matter of Long Island Road,* 19 Wend. 37; *People* v. *Kip,* 4 Cow 382; Longdell's Equity Pleading, secs. 43, 184.

BARTCH, J. (after stating the facts):

The controlling question in this case is whether the restraining order issued by the court, in the case of Wyman *et al.* against Ferguson *et al.,* was violated in any of the proceedings which culminated in the issuance and delivery of the treasury stock to Duncan J. Frew, and Frew's title thereto rendered void, so that he and his transferees could not lawfully vote it at the annual meeting in 1895 for the election of directors. If that stock was illegally voted, then the defendants have no right to act as directors of the company. The command of the restraining order, so far as material to this decision, is "that said defendants, and each of them, their agents, servants, and employés, be, and they are each of them hereby, enjoined and restrained from performing any of the acts threatened by them to be performed and com-

plained of in said complaint, pending the further hearing of this order." This, in a general way, as will be observed, prohibits each and all of the defendants in that suit, and their agents and servants, from doing any of the acts threatened to be performed by them, and complained of in the complaint. There are no specifically threatened acts mentioned in the order, but only such as are complained of, and in determining whether an actual breach has been perpetrated the terms of the injunction itself must be considered, and where the writ does not specifically restrain the parties enjoined from the com. mission of definite acts, but only in a general way enjoins them from the performance of acts complained of, which, it is claimed, will produce certain results, it must satisfactorily appear, in order to constitute a breach of the injunction, that the acts performed were included within its scope. High. Inj. § 1433. In the case at bar the question, therefore, arises, what acts are complained of in the complaint to which the order refers, which the defendants, or either of them, threatened to perform? And upon a determination of this, the further question will necessarily be presented, were the acts performed by Frew and others, which resulted in his obtaining the stock in question, within the terms or spirit of the injunction? To determine these questions reference must be had to the complaint which was made the basis of the restraining order. An examination thereof shows that it charges the defendants therein with having "entered into a fraudulent and wrongful conspiracy for the purpose of injuring these plaintiffs," and all other shareholders, and for the "purpose of obtaining to themselves the entire control of said company;" and then alleges in detail certain acts and things which the defendants would perform, among others that defendants Ferguson

and Campbell claimed to be a majority of the executive committee, and would sell the treasury stock to pay fictitious claims, for the purpose of obtaining control of the company, in furtherance of that conspiracy. The allegations as to these acts and things, however, appear to be mere suppositions as to what the defendants would do, and not averments of what they had threatened to do. Nor does the evidence show that the defendants threatened to do what it is alleged they would do. It is clear that the gravamen of that action was the conspiracy attempted to be set up in the complaint, and the restraining order was directed, as its terms plainly indicate, to the acts which might be performed to carry out the alleged conspiracy, Whether it was sufficiently definite for that purpose, it is not necessary to decide. It is apparent, however, that it enjoined the commission of no act on the part of the defendants, even as to the treasury stock, which was not complained of. Nor did it prohibit the bringing of any action at law against the company by any person which might involve such stock. Nor was there any allegation in the complaint that any of the defendants had threatened to issue and deliver the stock, or would deliver the same, as a part of the alleged plot to obtain control of the company. Under these circumstances the defendants Ferguson and Campbell committed no breach of the injunction if they delivered the stock in question in obedience to the demand of a person who had the lawful right and title thereto. On this point it is shown that Frew was not a defendant or party to the action for the injunction; that he had a valid claim against the company, and brought suit at law thereon in a court of competent jurisdiction, obtained judgment therefor, caused an execution to be issued thereon, which was levied on the stock; and that thereafter the

stock was sold by a proper officer, under the execution, in a regular manner, and purchased by Frew. The officer delivered to him a certificate of sale which he presented to Ferguson and Campbell, as vice president and secretary, respectively, of the company, and they issued and delivered the stock to him. It is admitted by counsel for the appellants that the restraining order did not prohibit the obtaining of the judgment against the company, but it is insisted that its officers could not issue and deliver the stock without first having obtained permission from the court which issued the injunction. We have seen, however, that the only acts restrained were such as might be committed in furtherance of the conspiracy charged, and therefore the issuance and delivery of the stock upon demand to one who had the lawful right thereto constituted no breach of the injunction, and was neither in violation of its spirit nor terms. Frew thus having lawfully obtained the stock in question, he and his transferees had the right, after the same was properly transferred on the books of the company, to vote it at the annual meeting for the election of directors; and the defendants in the case at bar, having received a majority of the legal votes cast, and qualified, constituted the rightful board of directors. We find no reversible error in the record. The judgment is affirmed.

MINER, J., and CHERRY, District Judge, concur.